IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CHRISTIAN T.P.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:21-cv-01366-JEH |

## Order and Opinion

Now before the Court is the Plaintiff Christian T.P.'s Motion for Summary Judgment (Doc. 13), the Commissioner's Motion for Summary Affirmance (Doc. 16), and the Plaintiff's Response (Doc. 18).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Christian T.P. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on October 28, 2018, alleging disability beginning on June 15, 2018. His DIB and SSI claims were denied initially and upon reconsideration, and a hearing before the Honorable David W. Thompson (ALJ) was held thereafter, on August 19, 2020. At that hearing, Christian was represented by an attorney, and Christian and a vocational expert (VE) testified.

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 12, 17).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7) on the docket.

The ALJ next issued an unfavorable decision, but the Appeals Council (AC) ultimately remanded the case in January 2021.

A second hearing was held on April 28, 2021, before the same ALJ. At the second hearing, Christian was represented by the same attorney, and he again testified as did a different VE. Following the hearing, Christian's DIB and SSI claims were denied on May 17, 2021. His request for review by the AC was denied on October 14, 2021, making the ALJ's May 2021 Decision the final decision of the Commissioner. Christian timely filed the instant civil action seeking review of the ALJ's May 2021 Decision on December 15, 2021.

## II

Christian argues the ALJ committed the following errors: 1) the ALJ erred in his assessment of Christian's complex regional pain syndrome by mistaking the law and the facts; 2) the RFC finding does not reflect the manipulative limitations supported by the findings and observations of the consultative examiner, which the ALJ ignored or mischaracterized; and 3) the ALJ failed to build an accurate and logical bridge when discounting the significance of Christian's ongoing stay in a residential facility.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper

legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966.[3] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same. Compare 20 C.F.R. § 404.1501 et seq. (DIB) with 20 C.F.R. § 416.901 et seq. (SSI). Thus, the Court may at times only cite to the DIB regulations.

> 3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
>
> 4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
>
> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Christian claims error on the ALJ's part at Steps Two and Four.

### A

At Step one, the ALJ determined Christian had not engaged in substantial gainful activity since June 15, 2018, the alleged onset date. AR 15. At Step Two, the ALJ determined Christian had the following severe impairments: status-post spinal fusion surgery; degenerative disc disease; disorders of the nervous system; depressive/bipolar related disorders; and anxiety/obsessive-compulsive disorders. AR 16. At Step Three, the ALJ determined Christian did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can occasionally crawl and never climb ropes of scaffolds. The claimant can frequently reach to the side and handle or finger with his dominant (right) upper extremity and can occasionally reach overhead with his dominant (right) upper extremity. The claimant needs to avoid concentrated exposure to extreme cold. He is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction. The claimant is limited to occasional face-to-face work-related interaction with the public, co-workers and supervisors.

AR 18. The ALJ found Christian unable to perform any past relevant work. AR 22. At Step Five, the ALJ determined that considering Christian's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Christian could perform. AR 23. The ALJ concluded Christian had not been under a disability from June 15, 2018 through the date of the Decision, May 17, 2021. AR 24.

B

Christian first argues that the ALJ erroneously concluded that his complex regional pain syndrome (CRPS) was not even a medically determinable impairment, much less a severe one. He argues the ALJ reached that erroneous conclusion where the ALJ made findings contrary to the plain language of SSR 03-2p and rested his discussion of Christian's CRPS on misstatements of the record. The Commissioner counters that the ALJ irrelevantly determined that CRPS was not a medically determinable impairment where he reasonably assessed the State Agency medical experts' conclusions on Christian's manipulative abilities, and any errors at Step Two are harmless as long as the ALJ's findings at the remaining steps were adequate.

SSR 03-2p explains that CRPS "is a chronic pain syndrome most often resulting from trauma to a single extremity" and "[i]t is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." 2003 WL 22399117, at *1. CRPS can be established as a "medically determinable impairment" where there are "persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically document signs in the affected region at any time following the documented precipitant:" swelling; autonomic instability – changes in skin color or texture, changes in skin temperature; abnormal hair or nail growth; osteoporosis; *or* involuntary movements of the affected region of the initial injury. *Id.* at *4 (emphasis added).

At Step Two, the ALJ, referring to his later discussion, explained:

> [T]he claimant has exhibited changes in skin temperature on his right upper extremity as well as ongoing pain and dysfunction; however, he has not been noted to exhibit swelling, abnormal hair or nail growth, or involuntary movements. Moreover, the medical evidence detailing the claimant's evaluation and diagnosis for CRPS has not been provided, which limits the undersigned's ability to assess and consider his allegations.

AR 16. The ALJ thus concluded that the record did not contain sufficient evidence to support a finding that CRPS was a medically determinable impairment under the applicable regulations. *Id.* Later, the ALJ discussed medical records which noted grip strength weakness bilaterally, dusking color of the hands, tenderness to touch, temperature change in Christian's right hand, diminished sensation in Christian's right hand, cyanosis of the right ring finger, coolness to the touch, triggering motion in the right fifth digit, and mild swelling in the surface of the right hand. The ALJ concluded that while CRPS was mentioned a lot throughout the record, there were "no records to support a finding that it is a severe

impairment pursuant to SSR 3-2p [sic]." AR 21. He highlighted that there were "not objective diagnostic findings in the record to support the alleged problems with" Christian's right hand, including a lack of EMG/NCS reports, imaging reports, and any evidence of atrophy or muscle wasting in the dominant (right) upper extremity. *Id*. The Court agrees with Christian that the ALJ was mistaken in his application of SSR 03-2p to the facts of the case.

The ALJ confusingly concluded at Step Two that CRPS was not a medically determinable impairment and, at Step Four, concluded that no records supported finding CRPS was a severe impairment. That the ALJ's reasoning is hard to trace is underscored by the fact that Christian questions whether the ALJ intended his later statement as a Step Two evaluation of severity or a subjective symptom assessment under SSR 16-3p and the Commissioner side-steps it by reframing the issue in terms of the ALJ's "reasonable assess[ment]" of the State Agency medical experts' conclusions. That's the ALJ's first shortcoming. *See Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000) ("For meaningful appellate review, however, we must be able to trace the ALJ's path of reasoning").

Second, SSR 03-2p speaks of CRPS being a medically determinable impairment where *one or more* of the signs of swelling, autonomic instability, and abnormal hair growth are present, yet the ALJ found the absence of some signs (though others were documented) precluded finding CRPS to be a medically determinable impairment in this case. As Christian puts it, that he did not demonstrate other signs does not negate the existing positive ones, and the ALJ never explained why the signs he found missing were more telling than the signs that were present.

Further, SSR 03-2p does not speak of nerve conduction testing and imaging is only mentioned with regard to osteoporosis. Further still, the ALJ's own recitation of the evidence belies his earlier statement that the medical evidence

detailing Christian's evaluation and diagnosis for CRPS was not provided and his later statement there were no objective diagnostic findings in the record to support Christian's alleged problems with his right hand. It was at a November 2018 visit with his primary care provider, Joshua Sawlaw, M.D., that a physical exam noted dusking color. At a January 2019 neurological evaluation, the neurologist "agree[d]" that Christian "probably had" CRPS after examination noted temperature change in Christian's right hand. *Compare* ALJ Dec. (AR 19) ("evaluating neurologist indicated claimant *might* have [CRPS]") (emphasis added). At Christian's March 2019 consultative physical examination, the examining doctor listed as his "Diagnostic Impression" "[CRPS], right upper extremity" following an examination which revealed cyanosis of the right ring finger and a right hand cool to the touch. AR 679.

Had the foregoing confusing statements and errant conclusions not appeared in the ALJ's Decision, the Court, pursuant to its deferential review, would be more likely to view as harmless (both in the Step Two and Step Four context) the ALJ's consideration of the CRPS sign of atrophy. In support of his finding that there were no objective diagnostic findings in the record to support Christian's alleged right hand problems, the ALJ cited to a lack of evidence of atrophy or muscle wasting in the dominant (right) upper extremity. The ALJ specifically noted that at the most recent hearing in April 2021, "the claimant testified that he is now using his left upper extremity almost exclusively, hardly ever using his right upper extremity." AR 21. The ALJ reasoned "[t]his would reasonably result in atrophy or muscle wasting in the right upper extremity; however, there is no evidence of this." *Id*. The ALJ then cited the March 2019 consultative physical examination which provided "no obvious muscle atrophy" and Christian's ongoing treatment records. Christian actually testified, "it's really trying to learn how to do things a lot left handed at – at this point as – as my

8

inability to use my right upper extremity becomes more prevalent slowly. It just continues to become less able to use it, I guess." AR 38. Also, he so testified in 2021 whereas the records which failed to indicate atrophy were dated 2019. Notably, SSR 03-2p does not require atrophy be present; SSR 03-2p provides that muscle atrophy and contractures "can" develop and "[p]ersistent clinical progression resulting in muscle atrophy and contractures . . . in spite of appropriate diagnosis and treatment, hallmark a poor prognosis." 2003 WL 22399117 at *2. Ultimately, the ALJ's Step Two finding regarding CRPS is not supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (reminding that "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

The ALJ erred at Step Two and that error is not harmless for the reasons explained below.

## C

The Seventh Circuit Court of Appeals has explained that an error at Step Two is harmless where the ALJ goes on to properly consider all of a claimant's severe and non-severe impairments, the objective medical evidence, the claimant's symptoms, and the claimant's credibility when determining the RFC immediately after Step Three. *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015). The Commissioner relies upon that authority as well as her arguments that the ALJ reasonably assessed the State Agency medical experts' conclusions on Christian's manipulative abilities and reasonably explained and found Christian's history of complaints and treatment did not corroborate his testimony and reports to the Social Security Administration (SSA).

While true that the State Agency doctors specifically considered Christian's CRPS diagnosis when evaluating Christian's functioning, including manipulative limitations, the ALJ found those doctors' opinions persuasive, and Christian does

not specifically challenge the ALJ's finding in that regard, the Court is still not convinced "the ALJ thus irrelevantly determined that CRPS was not a medically determinable impairment."  Dft's MSA (Doc. 16-1 at pg. 5).  The ALJ's blunt conclusion that CRPS was not a medically determinable impairment certainly permeated his review of the record as a whole, necessarily including his analysis of the persuasiveness of record opinions, Christian's subjective symptoms, and the medical record.  True, the ALJ did not, without explaining his reasons, disregard evidence pertaining to Christian's allegations limiting CRPS symptoms, but that reasoning was erroneous under SSR 03-2p.  It therefore still appears that the ALJ disregarded significant conflicting evidence.  *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (stating "the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence").  Put another way, the ALJ used his erroneous interpretation of the CRPS evidence to reach his conclusions, both as to the State Agency medical experts' opinions and Christian's subjective symptoms; thus, the ALJ *relevantly* determined that CRPS was not a medically determinable impairment.

In his Response, Christian notes that the Commissioner's cited cases do not reflect that an ALJ's reliance on State Agency opinions somehow cures multiple factual and logical errors about the objective record or a claimant's allegations.  The Commissioner's cited cases involved the limited context of an ALJ's failure to consider a claimant's obesity, making them less convincing in the particular context of this case. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (finding remand for explicit consideration of obesity would not affect outcome of case where claimant did not specify how his obesity further impaired his ability to work and the ALJ adopted limitations suggestions by specialists and reviewing doctors who were aware of the claimant's obesity); *Hoyt v. Colvin*, 553 F. App'x 625, 628 (7th Cir. 2014) (unpublished opinion) (finding the ALJ indirectly

accounted for the claimant's obesity by relying on the medical opinions of state-agency physicians who evaluated his height and weight). The Court is well aware that it may not reweigh the evidence, substitute its judgment for the of the SSA, displace SSA's choice between two fairly conflicting views, or require that an ALJ's findings be perfect. But here, to say the ALJ's Step Two finding as to CRPS was, at best, irrelevant and, at worst, harmless is a step too far under the governing standard of review. After all, 20 C.F.R. § 404.1546(c) states the ALJ at the ALJ hearing level is responsible for assessing a claimant's RFC. *Compare* 20 C.F.R. § 404.1546(a) (stating "When a State agency medical . . . consultant and a State agency disability examiner make the disability determination as provided in § 404.1615(c)(1) . . . a State agency medical . . . consultant(s) is responsible for assessing your residual functional capacity"). And, of course, per 20 C.F.R. § 404.1545(a)(1), the RFC is assessed based upon all the relevant evidence in a claimant's case record.

### D

It is unnecessary for the Court to address Christian's remaining argument. However, on remand, the Commissioner should remain cognizant of the fact that Christian challenged the ALJ's consideration of his ongoing living situation at a residential facility.

### IV

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 13) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 16) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of

Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on March 27, 2023.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE